IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS J. NOLAN, :
      Plaintiff

      vs. : CIVIL NO. 3:CV-09-2567

LACKAWANNA COUNTY,
COREY O'BRIEN, :
MICHAEL WASHO,
      Defendants :

*M E M O R A N D U M*

*I.*      *Introduction*

We are considering a motion for summary judgment filed by the defendants, Lackawanna County, Pennsylvania, Corey O'Brien, and Michael Washo. This matter relates to plaintiff's, Thomas J. Nolan, dismissal from his position as Conflict Counsel with the Public Defender's Office of Lackawanna County. After his termination from employment, Nolan brought the instant action alleging, among other things, political patronage discrimination and wrongful discharge. Defendants argue that no reasonable jury could find for the plaintiff because he has failed to proffer any evidence showing discrimination.

We will examine the motion under the well-established standard. *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d. Cir. 2008). After careful review of the briefs and the record, we will deny the motion in part and grant in part.

*II.   Background*

This case concerns a series of political changes that occurred in Lackawanna County, Pennsylvania following the election of 2007.  Defendants O'Brien and Washo were running against the two incumbent county commissioners, Robert Cordaro and Anthony "A.J." Munchak.  Cordaro and Munchak were members of the Republican Party.  (doc. 22, ¶ 5.)  During the campaign, O'Brien and Washo received numerous complaints about the Public Defenders Office and indigent representation within the county.  (doc. 22, ¶¶ 40-42.)  Both defendants learned that the complaints focused on a variety of areas, such as full-time defenders working part-time and judges being unable to contact attorneys in the Public Defender's Office.  (doc. 22, ¶ 41.)  Some members of the Lackawanna County judiciary complained that the Defender's Office was in turmoil, and that indigent defendants were not getting proper representation.  (doc. 22, ¶¶ 41-42.)

After winning the election, O'Brien and Washo decided that a total reorganization of the Public Defender's Office was needed to ensure that the office was run more effectively.  (doc. 22, ¶ 45.)  The defendants were also facing an eight million dollar budget shortfall.  (doc. 22, ¶ 43.)  After consulting a team of experienced attorneys, including the former Chief Public Defender, the defendants decided to eliminate certain positions, including the plaintiff's, ostensibly because of ethical and budgetary considerations.  (doc. 22, ¶¶ 48-59.)  After meeting with the consulting team on December 14, 2007, O'Brien and Washo formulated and approved a restructuring plan

that eliminated plaintiff's "Chief Conflict Counsel" position and transferred the savings to the Public Defender's budget.  (doc. 22, ¶ 67.)  Defendants set an application deadline of January 14, 2008 for those interested in positions in the office.  (doc. 22, ¶ 69.)

During this time, plaintiff was still operating as Conflict, or Chief Conflict, Counsel in the office.  Nolan had been in his position following the election of 2003, when he was passed over for the Chief Public Defender position.  (doc. 22, ¶¶ 13-14.)  The "Chief Conflict Counsel" position was created, allegedly, as a political favor by Cordaro. (doc. 22, ¶ 14.)  The position was not advertised, and it carried a salary equivalent to that of the Chief Public Defender.  (doc. 22, ¶ 15-18.)

After the defendants initiated their plan, Nolan applied for a position in the office as a Conflict Counsel.  (doc. 22, ¶ 70-73.)  He was not hired, and his position was eliminated in January of 2008 soon after he submitted his application.  (doc. 22, ¶ 86.)

III.		Discussion

　　　　*A. Legislative Immunity*

The individual defendants argue that the claims against them should be dismissed because they are entitled to absolute legislative immunity.  The doctrine of legislative immunity grants to legislators absolute immunity for their legislative acts. *Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 773 (3d Cir. 2000).  In determining whether an official is entitled to immunity, we focus on the nature of the action rather than the "official's motives or the title of his or her office."  *Id.*  To this end, the Third Circuit employs a two-part test in determining whether an act is legislative.  *Id.*

at 774.  First, the action must be "substantively" legislative.  Essentially, a legislative act is one that involves policy-making decisions, "or, to put it another way, legislation involves linedrawing."  *Id.*  Second, the action must be "procedurally" legislative—passed by means of an established procedure.  *Id.*

Here, the individual defendants are Lackawanna County Commissioners who were tasked with adopting the County's budget.  The act of voting for and approving a budget where certain public employee positions are eliminated is legislative in nature.  *See Gallas*, 211 F.3d at 775 (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 47, 118 S.Ct. 966 (1998); *see also Brominski v. County of Luzerne*, 289 F.Supp.2d 591, 594 (M.D. Pa. 2003).  Accordingly, defendants O'Brien and Washo are entitled to absolute legislative immunity for their actions of preparing and approving the Lackawanna County budget, and we will dismiss them from the case.  However, municipalities are not protected by legislative immunity, *Carver v. Foerster*, 102 F.3d 96, 103 (3d Cir. 1996), and therefore are subject to liability under 42 U.S.C. § 1983.  Thus, Lackawanna County remains a defendant in this action.

       *B.  Political Patronage Discrimination*[1]

---

[1] 42 U.S.C. § 1983 provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.... 42 U.S.C. § 1983.

To make out a *prima facie* case of political patronage discrimination, Nolan must show that (1) he was employed at a public agency in a position that does not require political affiliation, (2) he was engaged in constitutionally protected conduct, and (3) his conduct was a substantial or motivating factor in his dismissal from employment. *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007).[2] Once Nolan meets this burden, the defendants may avoid liability by "proving by a preponderance of the evidence that the same employment action would have been taken even in the absence of the protected activity." *Stephens v. Kerrigan*, 122 F.3d 171, 176 (3d Cir. 1997).

Based on the record before us, we conclude that factual disputes preclude a finding that Nolan was in an apolitical position. Defendants contend, and the record shows, that plaintiff's current position was created after he was passed over for the Chief Public Defender position. (doc. 22 at § 14, admitted doc. 27 at § 10.) The record also raises the inference that the position was created because of plaintiff's political support for Cordaro. (doc. 22 at § 14-18.) However, the mere appointment to a position from a political ally does not end our inquiry. Employers are "allowed to make employment decisions based on political affiliation when 'policymaking' positions are at issue." *Galli*, 490 F.3d at 271 (citing *Elrod v. Burns*, 427 U.S. 347, 637, 96 S.Ct. 2673 (1976)). In analyzing whether Nolan's position involved policymaking, we look to several factors,

---

[2] As to the second prong of our analysis, the evidence shows, and defendants do not dispute, that plaintiff was a supporter of the previous Republican Party administration in Lackawanna County. Thus for purposes of this motion, we conclude for the purpose of the instant motion that Nolan was engaged in constitutionally protected activity.

including whether (1) his duties were non-discretionary or non-technical (2) he participates in discussions or other meetings, (3) he prepares budgets, (4) he possesses hiring and firing authority over employees, (5) his salary is high, (6) he retains power over others, and (7) he can speak for policymakers.  *Galli*, 490 F.3d at 271.  A final key factor is whether Nolan has "meaningful input into decisionmaking concerning the nature and scope of a major program."  *Id.*  The facts show that Nolan was in a highly paid, part-time Conflict Counsel position.  This fact alone however is inconclusive.  The remaining factors require credibility determinations which must be analyzed by a jury.

The third prong of the political patronage test has two aspects: knowledge and causation.  *Goodman v. Pennsylvania Turnpike Comm'n,* 293 F.3d 655, 670 (3d Cir. 2002).  Nolan must produce evidence "tending to show that the [defendants] knew [he] was not a Democrat or supporter of the administration" and thus fired as a result.  *Galli*, 490 F.3d at 275.  Knowledge can be shown through direct or circumstantial evidence.  *Goodman*, 293 F.3d 670.  It may also be inferred when an employee offers evidence that his political affiliation was "generally known to co-workers."  *Id.* at 671 (citing *Stephens*, 122 F.3d at 177).  Once Nolan has shown knowledge, he must then prove that his political affiliation was a substantial or motivating factor for his termination.  *Goodman*, 293 F.3d at 673.  To this end, we examine the entire record, viewing all evidence in a light most favorable to Nolan.  *Id.* at 673-74.

The defendants contend that Nolan has failed to meet his burden of showing knowledge and causation.  We disagree.  First, as to knowledge, Nolan has

presented sufficient evidence suggesting that he was an active member of the Republican Party in Lackawanna County. He openly supported and donated to other Republican candidates within the county. (doc. 27, ¶ 32.) In addition, he had previously been shown to be a member of the Justice transition team under the previous Republican administration. (doc. 27, ¶ 32.)[3] While this evidence is not overwhelming, it does raise the inference that politically active citizens in Lackawanna County, such as defendants O'Brien and Washo, would have known of Nolan's support for the prior administration. Likewise, there is sufficient evidence for reasonable jurors to conclude that the defendant was fired for political reasons. While the plaintiff's did seemingly engage in an open hiring process, the timing of their decision to terminate plaintiff's employment, the production of a hiring chart indicating numerous employment changes prior to deadlines for the open hiring process, the length of plaintiff's employment as "chief conflict counsel", nearly four years, and plaintiff's own statements, though self-serving, indicating the political nature of the hiring process, are sufficient to raise a factual dispute whether Nolan's political association was a substantial reason for his termination. (see doc. 27, ex. CC, GG, FF; doc. 22, ¶¶ 18, 29, 86.)

      Based on the proceeding, we conclude that plaintiff proffered sufficient evidence creating genuine issues of material fact concerning the reasons for his termination.

---

[3] Nolan denies ever meeting with the previous administration's Justice transition team. However, the mere existence of this document showing plaintiff as a member of said team, and defendants knowledge of it, raises the interference that O'Brien and Washo were aware of Nolan's political leanings.

*C. Wrongful Discharge*

Generally, Pennsylvania law does not provide for a common-law cause of action for wrongful discharge. *Dewees v. Haste*, 620 F.Supp.2d 625, 639 (M.D. Pa. 2009)(Kane, J.)(citing *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 614 (3d Cir. 1992)). Exceptions to this rule have been recognized only under limited circumstances, such as where the discharge of an at-will employee would threaten clearly mandated public policy. *Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917, 918 (Pa. 1989). Federal and state courts in Pennsylvania have been reluctant to apply this doctrine broadly. *Dewees*, 620 F.Supp2d at 639. As noted by Chief Judge Kane in *Dewees*, when Pennsylvania courts have been faced with wrongful discharge claims premised solely on constitutional protections, Pennsylvania courts have been "disinclined" to grant relief. *Id.* at 640 (gathering cases). In light of this, plaintiff's unsupported assertion, that his politically motivated termination is sufficient to state a claim for wrongful discharge, is unconvincing. Therefore, we will dismiss plaintiff's common law wrongful discharge claim.

*D. Punitive Damages*

Punitive damages may be awarded in civil rights cases "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625 (1983). Punitive damages are meant to punish a

defendant for willful or malicious conduct and to deter others from engaging in similar behavior. *Allah v. Al-Hafeez*, 226 F.3d 247, 252 (3d Cir. 2000).

Inasmuch as factual disputes preclude summary judgment on plaintiff's political patronage discrimination claim, we will deny defendants' request to dismiss Nolan's claim for punitive damages.

*IV.     Conclusion*

Based on the preceding, we will grant the individual defendants motion for summary judgment based on absolute legislative immunity and dismiss them from the case. We will also dismiss plaintiff's common law wrongful discharge claim. The sole remaining claim is for political discrimination under the First Amendment against Lackawanna County.

We will issue an appropriate order.

/s/William W. Caldwell  
William W. Caldwell  
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS J. NOLAN,  :
    Plaintiff

    vs.  :  CIVIL NO. 3:CV-09-2567

LACKAWANNA COUNTY,
COREY O'BRIEN,  :
MICHAEL WASHO,
    Defendants  :

*O R D E R*

AND NOW, this 25th day of August, 2011, upon consideration of the defendants' motion for summary judgment (doc. 21), and pursuant to the accompanying Memorandum, it is ordered that:

    1. The motion is granted in part and denied in part.

    2. Defendants Corey O'Brien and Michael Washo's motion for summary judgment is granted based on legislative immunity, and they are dismissed from this action.

    3. Defendant Lackawanna County's motion for summary judgment is granted in part and denied in part.

    4. Plaintiff's common law wrongful discharge claim is dismissed for failure to state a claim, but his political discrimination claim will remain.

    5. Jury selection will proceed on September 12, 2011 on plaintiff's political discrimination claim against Lackawanna County.

                              /s/William W. Caldwell
                              William W. Caldwell
                              United States District Judge